VFW-13-2225 Melissa Downey et al. v. FNMA Argument not to exceed 15 minutes per side Vanessa G. Fluker For the Appellant Good morning. May it please the Court, Vanessa Fluker on behalf of the Appellants. I would like to reserve at this time 3 minutes in rebuttal time. This matter arises from a foreclosure by advertisement under Michigan law. The underlying motion was a motion to dismiss under 12b-6. In order to survive a 12b-6, a Plaintiff must include enough facts to state a plausible claim on his face. That is very significant. This was not a summary judgment motion. It was a motion to dismiss. And the Appellants did plead facts supported by exhibits to meet this standard. Now, a lot of the argument by the Appellee was with respect to the post-redemption remedies available to borrowers. Michigan does provide for post-redemption remedies as long as the borrower is able to establish fraud, irregularity, accident, or mistake in the foreclosure action. And that has been established in this particular instance. By way of a brief factual background, the Appellants in this matter were in a rearage. They paid over $14,000 to cure that rearage, which puts them in a position to be eligible for a modification review under the Federal HAMP Program. They began that review with BAC home loans. They sent documentation back and forth. Then there was a cease of communication between July of 2011 and August of 2011 until 2012. Interestingly enough, this was the same time period that BAC home loans, a separate and independent entity, was subsumed and merged into Bank of America. So during that time period, they're getting no communication. And even more interesting about this is that after that merger process was over, after they sold these people's home at the sheriff's sale, they received correspondence from Bank of America saying, we're reviewing your loan. In fact, we've assigned you a single point of contact, Romero Cordo. At this point, they're at the eviction stage. There's a definite irregularity. One of our claims that we pled was negligence. And the appellee emphasized that the case cited in the brief by the appellant was a California case because at that time we didn't have a Michigan case and, therefore, was inapplicable. But since that time, the Sixth Circuit, this court has actually published a case, and that's MIC, the Federal Home Loan Mortgage Corporation, 743 F. 3rd, 149 and 166-167, that specifically states that federal statutes can be used offensively to establish state law claims. And they rely on the Seventh Circuit decision of WGAD v. Wells Fargo in a 673 F. 3rd, 547 and 544, which specifically states, and that was a HAMP modification claim where Ms. WGAD actually sued Wells Fargo for the failure to evaluate and modify the loan. And they said in that case, which the Sixth Circuit adopted, that you can bring state law claims based on the federal law, which is exactly what we did in this case. Our whole issue is that there was a duty to properly evaluate this loan. And if you look in the records, you will see I actually attached the HAMP guidelines that prohibit under Section 3 the referral of any mortgage loan to foreclosure before there's been a complete evaluation, even if you are eligible, they should send you a denial letter. Nothing was ever provided to these people, except when they get ready to get evicted, they get a letter saying, hey, your new person is Romero Cordo, and he's reviewing you for a modification. So obviously it's a very obvious breach of duty. Is there a problem in this negligence claim that while Fannie Mae is a HAMP participant, that they only had a quitclaim deed to the property? They didn't actually, Bank of America actually held the mortgage. Bank of America was their servicing agent, and I do make that argument in my brief. Bank of America serviced the loan for Fannie Mae, and that's also in the Pelley's brief. In fact, in the Pelley's brief, which I'll get to in one moment, they try to argue that Bank of America was the servicer by successor by interest to BAC Home Loans. So we're looking at an agency relationship here, which obviously makes Fannie Mae liable as well as the agent, the servicer, Bank of America, and BAC, who is now nonexistent and has been nonexistent. Even though Fannie Mae only took by a quitclaim deed? Well, in Michigan, just a brief Michigan foreclosure by advertisement background, the servicer generally serviced the loan because you have to have a recorded assignment in Michigan foreclosure law to be able to do anything with the loan. That's the Kim case. That's case law from the beginning. You have to have an assignment to be able to foreclose on the loan because you have to either be the servicer or the owner of the indebtedness in Michigan. So that is the way the practice is. The servicer has the assignment. They do the foreclosure. Then they quitclaim back to the investor, be it Fannie Mae, be it Freddie Mac, be it a securitized trust. That is the process. And Fannie Mae is the investor in the loan. And in the record, I actually attached the MERS identification servicer sheet, where it actually identifies actually BAC Home Loans as the servicer and Fannie Mae as the investor, and that is attached as it might exist. And your position is it does not matter when Fannie Mae took the deed to the property? Fannie Mae has always been the investor. So they've always had an interest in the loan. BAC Home Loans was the servicer, and the servicer has to have a recorded interest in Michigan in order to move forward any type of foreclosure action or any action whatsoever. And at the end of the day, once there's a share, generally there's a quick claim back to the investor. And as I indicated, there is an exhibit in my brief that shows the relationship between the servicer and the investor. So it's not like Fannie Mae just got that interest for the first time. The quick claim is just to complete the title post-foreclosure. So with respect to that, that is not a flaw or anything that would in any way negate the negligence claim. And as I indicated, Mick is very strong on that and pretty much indicates that you can move forward on state law claims, be they contract or tort claims. Additionally, we have a major issue with the statutory compliance under MCL 630-2041D. In Michigan, the statute provides that a party can foreclose by mortgage by advertisement if they are the owner of the indebtedness, a partial owner of the indebtedness, or the servicing agent. BAC Home Loans was none of these at the time of the foreclosure. The foreclosure occurred in January, January 10, 2012. BAC Home Loans ceased to exist in July of 2011. Now, Apelli makes some representations in this brief that aren't exactly accurate. They indicate first that Bank of America foreclosed as successor by interest. That is not true. In the foreclosure notice, which is attached to my brief as record number 1-2, specifically says it's BAC Home Loans, not Bank of America as successor in interest. Moreover, there is a representation that, well, this foreclosure notice was actually a pre-foreclosure notice. There are no pre-foreclosure notices in Michigan. It's a foreclosure notice that's posted to your house, is published for four consecutive weeks pursuant to statute, and the home is sold at the sheriff's sale. So BAC Home Loans, a nonexistent entity, actually effectuated this foreclosure when they didn't exist. Now, they made a significant argument about the merger of BAC into Bank of America and how somehow, even though it says BAC, Bank of America was actually standing in its shoes. Again, that argument fails. It fails for numerous reasons because Bank of America didn't have any recorded assignment,  and secondly, under the Michigan Business Corporation statute, it specifically articulates the process by which a surviving entity to a merger is able to use that name. MCL 450-1736-9B specifically states when a merger takes effect that all title to real estate and other property rights owned by each entity to the merger are vested in the surviving entity. 9C says that surviving entity may only use the name or the assumed name of the merged entity if the filings required by sections 12, 17, 3, or 4 are made. The reason this fails is twofold. One, attached as their Exhibit C to their brief is a certificate of merger where they specifically mark off this entity does not survive the merger, referring to BAC Home Loans does not survive the merger. So they specifically say that. And number two, there was never any filing under the Michigan Business Corporation's Act to say, well, for purposes of this, we're going to use this name. Nothing. So there's no filings. So we have a nonexistent entity that actually did the foreclosure by advertisement. And this, again, segues way into the violation of MCL 632-043. And in the Kim case, which was decided on December 21, 2012, after the filing of this, but it's been referred to a lot and I think it is applicable to address. It says, as a general matter, a mortgagee cannot foreclose the mortgage before the mortgage and all assignments of the mortgage are duly recorded. Bank of America didn't have any assignment recorded whatsoever. BAC is a nonexistent entity at the time. They did nothing to file with the Michigan Business Corporation's Act to perfect or cure any of these instances. So for them to move forward is not just a violation of the mortgage by advertisement statutes, but it's a violation of the Michigan Business Corporation Act, basically making that law nullity because they aren't complying with it. So the bottom line is that we have irregularities in this process and we have violations of the law. And I want to briefly address the issue of prejudice because that's very significant. They argue there's no prejudice to the borrowers. That's untrue. But first of all, I would like to indicate that the Kim case was decided in December, 2012. It was after the filing of the plaintiff's complaint, which was actually a counter-complaint in the lower court that was removed, and after the filing in federal court. So that was not even the law at the time. But that being the case, still, appellants did establish prejudice in this matter. First and foremost, appellants are dealing with who they thought was BAC. Now they don't know whether they were dealing with BAC representatives or Bank of America representatives. All they know is they got no response until this whole merger process is over and they had sold their home. Then Bank of America sends them a letter saying, here's your single point of contact. May I finish that sentence, please? That is prejudice because had they been contacted and if they had followed the HAM guidelines, they would have had an opportunity to have the loan evaluated and retain their home. And I'll reserve the rest for my rebuttal. Thank you very much. Thank you. Good morning, Your Honors. Rodney Perry on behalf of Federal National Mortgage Association. I will, as I did in the brief, refer to Federal National Mortgage Association as Fannie Mae. I will also refer to, there's one other party that's referenced quite a bit and involved, Bank of America, N.A. I will try to refer to it as Bank of America, but I'm accustomed to referring to it as BANA. So if I slip of the tongue, refer to it as BANA. I'm talking about Bank of America, N.A. There are, based on my reading of the appellant's brief and their complaint, there are three bases in which they seek to set aside the foreclosure sale in this case. First, they say that there is a lack of standing because BAC home loan was the foreclosing party, but it wasn't in existence at the time, and there is no record chain of title for Bank of America because there is no assignment. Secondly, they claim that there was some impropriety in the modification process. Let's assume there was impropriety in the modification process. The question is who owed the duty and whether there's a claim available, right? Absolutely. Well, with respect to their freestanding claim for negligence, I believe Your Honor is spot on there that there is an issue because the way I read the complaint, they seek to set aside the foreclosure sale, and then they have a separate claim that is a freestanding claim for negligence, which I assume is a claim for damages. That claim for negligence is asserted against Fannie Mae. Fannie Mae was not involved at all, and the negligence claim is based on the modification process. The facts in the record make it look pretty bad, don't they? The facts in the record? Well, I don't know that they have facts in the record about what happened in the modification, Your Honor, Well, exactly. The allegations simply suggest that at one point they say they were not reviewed for a modification. At another point in their complaint, they concede that they were, in fact, reviewed for a modification and denied for a modification. The modification was denied. At another point, they claim that the foreclosure proceeded while they were being reviewed for a modification. That's confusing. Do you think of how confusing it was to them to experience it, right? I understand it could be confusing, Your Honor, but whether it's a basis for setting aside the foreclosure sale is a completely different issue, and I think that I would submit that it is not. There is ample case law that says that it's not. With respect to the freestanding negligence claim that they attempt to assert, the claim is asserted against Fannie Mae, but Fannie Mae was not at all involved in the loan. Fannie Mae did not service the loan. Fannie Mae was not the owner of the loan. That was the question. Yes. What is clearly is February 22, 2012, the first time Fannie Mae was involved. Yes. Yes. Before that, the Well, that had been countrywide. Is it different? It was BAC Home Loans as the owner, and that was once BAC was merged into Bank of America, Bank of America became the owner of the loan. Actually, the mortgage holder, correct? Yes, that's correct. Thank you. That's correct. And the entity that conducted the, that proceeded with the foreclosure. Appellants suggest otherwise, and they make, they spend a lot of time in their brief arguing the issue that BAC Home Loans did not exist at the time of the foreclosure. We don't dispute that. BAC Home Loans merged into Bank of America on July 1, 2011. The foreclosure All of that was prior to Fannie Mae taking any interest in this property. Is that right? Yes. Yes. The deed to Fannie Mae was in February of 2012. February of 2012. And since that time, Your Honor, this court has actually dealt with that particular issue, and Appellant's counsel mentioned the Mick case, Mick versus Federal Home Loan Mortgage Corporation. This court dealt with a very similar issue where the borrowers defaulted. What's the cite to that again, please? Mick is 743 F3rd 149. So a very similar factual scenario where the borrowers defaulted. The lender in that case was City Mortgage, foreclosed on the, and purchased the property at the foreclosure sale. Freddie Mac sought eviction. The property was deeded to Freddie Mac. Freddie Mac sought to evict the homeowners from the property. The plaintiffs brought a claim that Freddie Mac had violated their due process rights in the foreclosure process, and this court held that because Freddie Mac was not a party to the foreclosure, it could not be held liable for any procedural defects during those proceedings. That's exactly the case here. Freddie Mac was not at all involved in the foreclosure proceedings, sending the notices or conducting the modification evaluation or dealing with the plaintiffs in their efforts to modify their mortgage loan. Plaintiffs or appellants even concede that in their brief and hear the arguments today. But to go back to the issues where they seek to set aside the foreclosure sale, as this panel well knows in Michigan, the foreclosure buys advertisement statute provides that once the lender, the mortgagee, has foreclosed on the property and a foreclosure sale has taken place, the homeowner has a certain amount of time, six months in this case, in which he or she can redeem the property. The foreclosure statute provides that after that period of time passes, the homeowner loses all right entitled to the property. There have been recent cases that come out of the Michigan Court of Appeals that suggest that the previous state of the law where there was an opportunity for homeowners to seek to equitably extend the redemption period to try to recover the property or to set aside the foreclosure sale, that they could do so post-redemption upon a showing of fraud and irregularity. A couple new cases, recent cases from the Michigan Court of Appeals suggested that the tide is shifting and that bar is being raised higher to the point where post-redemption there is no opportunity for borrowers to redeem the property or recover the foreclosure sale, that any showing of fraud or irregularity in the foreclosure process must occur before the redemption period expires. Those two cases, which I'll just mention briefly for the court to consider, the first is Bryan v. JPMorgan Chase Bank, 2014 Westlaw 1394782, in which the Michigan Court of Appeals reaffirmed its previous holdings and unpublished opinions. And this is a published opinion where it said that once the redemption period expires, a homeowner loses all interest in the property. And in fact, the court says that they lose standing or the right to challenge the foreclosure. In a case even more recent than that, this is an unpublished opinion from the Michigan Court of Appeals, Dudley v. Bank of America, 2014 Westlaw 2118233. The Michigan Court of Appeals goes even further and says, although a clear showing of fraud or irregularity allows for an equitable extension of the redemption period, the redemption period cannot be extended once it has expired. And I would submit that this suggests that any assertion of fraud or irregularity in the foreclosure process must be made before the redemption period lapses. In this case, the redemption period expired on July 10, 2012. It's undisputed that the appellants made absolutely no effort to challenge the foreclosure before the redemption period expired or to redeem the property within the redemption period. In fact, they did nothing until Fannie Mae sought to have them evicted from the property and file the eviction proceedings in state court. Even if we set aside the two new cases that suggest that any showing of fraud or irregularity must come before the redemption period expires, I would submit that based on the pleadings in this case and the record evidence, the appellants have not offered any allegations sufficient to satisfy the very high standard. And this court has recognized that it is an extremely high standard and said, regardless of whether you refer to it as an issue of standing or as a merits determination, the standard is a very high one that without a clear showing of fraud or irregularity in the foreclosure process itself, it can't relate to something outside of the foreclosure process. It must relate to the foreclosure process itself. If the homeowners cannot make that showing, they have no opportunity and cannot have a foreclosure sale set aside. There are, again, two issues that the appellants appear to rely on to attempt to set aside the foreclosure sale. The first is this business about BEAC not being in existence and Bank of America not having a chain of title. And as a preliminary matter, they state in their – or not having – that Bank of America didn't have an assignment. But as a preliminary matter, they state in their brief that if their positions are accepted, that the foreclosure sale is void. And that is an absolute incorrect statement of the law, and it's well established by the Kim case, the Michigan Supreme Court, that if there are demonstrated defects or irregularities in the foreclosure process, that simply renders it – the foreclosure sale voidable, not void, and the homeowners have to show that there has been some prejudice. With respect to whether the appellants have demonstrated in their pleadings any fraud or irregularities sufficient to set aside the foreclosure sale, the district court correctly held that they had not. The certificate of merger showing that as of the time of the foreclosure sale or when the foreclosure proceedings began with the first notice that Bank of America had acquired and BEAC home loans had merged into Bank of America. The sheriff's deed, quite easily a close review of that shows that Bank of America was the foreclosing party. In fact, it says Bank of America as successor by merger or as successor in interest, I believe, to BEAC home loans. The quick claim deed is from Bank of America to Fannie Mae. These documents conclusively show that Bank of America was the foreclosing party. The notices that were sent similarly reference Bank of America. Plaintiffs have not and they cannot raise any issue with respect to the validity of the merger between Bank of America and BEAC home loans. Therefore, Bank of America was the proper foreclosing party as the owner of the indebtedness and oddly enough, plaintiffs concede in their complaint and hear on the record today that Bank of America was also the servicer, which under the Michigan statute entitles them to foreclose on the property as a servicer or as the owner of the indebtedness, both of which Bank of America was at the time of the foreclosure sale. Counsel raises another issue about whether Bank of America was required to file, record an assignment of the mortgage. The district court held that that is not a requirement and the law is pretty clear that it is not. A party acquiring a title to property by merger is not required to record an assignment. In addition to the cases that we've cited in our brief, this particular issue has been addressed by the Michigan Supreme Court in the Kim case, in Kim versus JPMorgan Chase that's been discussed here. Kim recognized the common law understanding that a mortgagee cannot validly control by, validly foreclose by advertisement unless the mortgagee, mortgage and all assignments of that mortgage except those affected by operation of law have been recorded. That court, the Michigan Supreme Court recognized that a merger is a transaction by operation of law. If there's any doubt about whether the holding in Kim demonstrates that a merger was a party taking an assignment by merger or taking a mortgage by merger need not record an assignment, post-Kim cases have come to the same conclusion. There is a case out of the Michigan Court of Appeals, Gray versus City Mortgage, 2013 Westlaw 249-5115 where the Michigan Court of Appeals relying on Kim held that a party acquiring a mortgage by merger need not record an assignment in order to foreclose. Counsel, you will note that your red light has come on. Ms. Flucker, what is our jurisdiction as it relates to the rule of law we must follow on this appeal? What is the standard of review? The standard of review would be the 12B6 standard of review, that whether the plaintiff stated a plausible claim on the face of the complaint, whether there's issues that were raised that factual development would be needed, and all inferences are supposed to be in favor of the non-moving party, which is the plaintiff. And that is specifically one of our issues. Counsel has kept saying, they want this, you want this court to set aside the sheriff deed. No, what I want is this court to reverse the 12B6 so we can have discovery and an adjudication on the merits of this case, which will clearly establish our case. Counsel made a comment as to, well, the sheriff's sale took place, you know, and they did nothing. They sat on their hands. No, they didn't. They're still trying to communicate with Bank of America. The letter from Bank of America was July 24, 2012, which specifically states, my name is Romero Cordo. I'm your new customer relation manager at Bank of America, your home loan servicer. I will continue to work with you with the work we started with your previous manager, which was way back with BAC, with the same goal, pursuing every available option to assist you with your home loan. These people were doing what they were told to do and not sitting on their hands. Secondly, I would like to address the issue of ‑‑ Ms. Flocker, may I ask this question? After the foreclosure sale, a plaintiff had a six-month statutory period of time in which to reduce or redeem the property. When that period expired, the downing lost their right, title, and interest in the property. As a result, the former owner's right in and title to the property are extinguished. How do you meet that challenge? That is exactly why you have the exception that says that if you can show fraud, irregularity, mistake or accident, and even the new cases just cited by counsel, Brian v. J.P. Morgan Chase, all say the same thing. The Brian court actually adopted the reasoning in Overton because that's the standard in Overton, that's the standard that's used in Michigan. They adopted it and it became a published opinion. There was nothing that eliminated that standard. In fact, it would be impossible to eliminate that standard. For instance, someone puts- Did it change the time that you had to raise them? Pardon me? Did it change the time- No, not with respect to- It becomes applicable. Not with respect to if you make a showing of fraud, irregularity, accident, or mistake. And counsel-my red light's on. May I finish the sentence? Finish your sentence. Okay. Counsel indicated that we're trying to redeem, extend redemption. No. We're trying to establish and show the irregularity and mistake that obviously went on in this transaction because of the merger of Bank of America and BAC Home Loans and the inability for the appellants to be able to avail themselves to the statutory benefits to them through the modification process, which would have precluded the mortgage and the default, which is point A under MCL 632-04-D1. You have to have a valid default, and we believe all of that needs discovery and that this is not a motion or a scenario that is appropriate for a motion to dismiss. Thank you very much. Thank you, counsel. The case will be submitted. Thank you. There being nothing further to be argued this morning, you may adjourn the court.